1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAVIAD AKHTAR,

11           Petitioner,                    No. CIV S-03-2674 MCE GGH P

12       vs.

13   MIKE KNOWLES, Warden,

14           Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17           Petitioner is a state prisoner represented by counsel, proceeding on an amended

18   petition for writ of habeas corpus (filed May 6, 2005).  Petitioner challenges his 2002 conviction

19   on charges of attempted deliberate and premeditated murder, first degree burglary, mayhem,

20   torture, vehicle theft[1], removing a telephone line, violation of a court order with physical injury

21   and two counts of abusing or endangering the health of a child.  Petitioner is serving a sentence

22   of life in prison with the possibility of parole and a consecutive term of five years.

23           Petitioner seeks relief on the grounds that his trial and appellate counsel rendered

24   ineffective assistance for the following reasons: 1) failure to challenge the appointment of only

25   _____

26       [1] This count was reversed by the California Court of Appeal.   See also 2003 WL 2292528.

                                        1

1  one mental health professional to evaluate competency; 2) failure to challenge the finding of

2  competency based solely on one psychologist's report; 3) failure to challenge the competency

3  finding without a jury; 4) failure to raise an insanity defense; 5) failure to challenge on appeal the

4  presence of a support person during witness testimony; 6) failure to challenge on appeal the

5  introduction of genital injury evidence; 7) failure to argue for a self-defense instruction; 8) failure

6  to argue for a lesser included offense charge; 9) failure to challenge the jury instructions on

7  willfully false statements.

8       After carefully considering the record, the court recommends that the petition be

9  denied.

10  II.  <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

11       The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

12  petition for habeas corpus which was filed after the AEDPA became effective.  <u>Neelley v. Nagle</u>,

13  138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

14  AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

15  standards of review to be used by a federal habeas court in assessing a state court's adjudication

16  of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263

17  (9th Cir. 1997).

18       In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

19  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

20  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

21  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

22  "unreasonable application of" that law.  <u>Id</u>. at 495, 117 S. Ct. at 1519.  "Contrary to" clearly

23  established law applies to two situations:  (1) where the state court legal conclusion is opposite

24  that of the Supreme Court on a point of law, or (2) if the state court case is materially

25  indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is

26  opposite.

1    "Unreasonable application" of established law, on the other hand, applies to

2    mixed questions of law and fact, that is, the application of law to fact where there are no factually

3    on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

4    Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

5    AEDPA standard of review which directs deference to be paid to state court decisions.  While the

6    deference is not blindly automatic, "the most important point is that an *unreasonable* application

7    of federal law is different from an incorrect application of law....[A] federal habeas court may not

8    issue the writ simply because that court concludes in its independent judgment that the relevant

9    state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

10   that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

11   1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

12   objectively unreasonable nature of the state court decision in light of controlling Supreme Court

13   authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

14       The state courts need not have cited to federal authority, or even have indicated

15   awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

16   Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

17   contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

18   unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

19   occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

20   established Supreme Court authority reviewed must be a pronouncement on constitutional

21   principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

22   binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

23       However, where the state courts have not addressed the constitutional issue in

24   dispute in any reasoned opinion, the federal court will independently review the record in

25   adjudication of that issue.  "Independent review of the record is not de novo review of the

26   constitutional issue, but rather, the only method by which we can determine whether a silent state

3

1  court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.

2  2003).

3  III.  <u>Standards for an Evidentiary Hearing</u>

4  　　　The ordinary standards under federal law for an evidentiary hearing, which are

5  well known and well established in the Ninth Circuit, are as follows.  "To obtain an evidentiary

6  hearing on an ineffective assistance of counsel claim, a habeas petitioner must establish that (1)

7  his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief and

8  (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant

9  facts." <u>Correll v Stewart</u>, 137 F.3d 1404, 1413 (9th Cir. 1998).  Nevertheless, the court does not

10 have to hold an evidentiary hearing when the record clearly refutes the collateral factual

11 allegations raised by petitioner.  <u>Schiro v. Landrigan</u>, __U.S.__, 127 S. Ct. 1933, 1940 (2007).

12 Moreover, <u>Schriro</u> also announced that in determining whether to grant an evidentiary hearing

13 the federal court must apply the AEDPA deferential standards to legal and factual questions

14 necessarily reached by the state courts.  <u>Id</u>.  Thus, for example, if the reasons for counsel actions

15 were at issue, but under deferential standards, the court could not find prejudice, no evidentiary

16 hearing would be necessary.

17 　　　In addition, the undersigned emphasizes that in order to obtain an evidentiary

18 hearing, the claim, when viewed in light of the allegations, must be colorable.  "It is well settled

19 that '[c]onclusory allegations which are not supported by a statement of specific facts do not

20 warrant habeas relief.'" <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) quoting <u>James v.

21 Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).   This includes the recitation of critical facts supporting the

22 alleged violation, including any requirement of prejudice.  The necessity for the statement of a

23 colorable claim is important for the resolution of several claims herein without holding an

24 evidentiary hearing.

25 \\\\\

26 \\\\\

4

IV.  <u>Background</u>

        The opinion of the California Court of Appeal contains a factual summary.  After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

        The victim and the two children of defendant and the victim all testified at trial.  The following is a summary of their testimony (any conflicts in which are resolved in favor of the judgment).

        The victim and the defendant separated in July 2000, when he moved out of their home.  She obtained a restraining order against him in December 2000.  Divorce proceedings were pending.  As of February 28, 2001, the defendant had not seen his children since the separation.

        On that date, the victim returned to her home about 4:30 p.m. after picking up the children (born 1991 and 1993) at school.  There were no cars parked outside the house.  The victim sat down on the sofa with her daughter while the children watched television.  The defendant abruptly emerged from the bathroom, holding a pellet gun.  The victim ran to the front door.  The defendant fired at her, then stopped her escape by beating her on the head with the gun until it broke into two pieces.  He dragged her into the kitchen.[2]  Their daughter heard him use a phrase twice that in their culture meant he desired a reconciliation.  He began to stab the victim with a knife from his pocket.[3]  Their son testified the defendant also stabbed her with a knife from the kitchen.  The children testified that the defendant "started jumping on her back" a "[w]hole bunch of times."  He laid a towel over the victim's face, grabbed the keys to her car, and left with the children, taking them to his sister's house.  When the children questioned his actions, he told them to be quiet or else he would throw them under the wheels of the car.

        The victim was hospitalized for over three weeks.  She could not speak until May 2001, has recurring dizzy spells, and needs someone to watch her.  The trauma surgeon described her injuries as including three deep stab wounds to the neck that perforated her esophagus and trachea, multiple cuts to her face, black eyes from a skull fracture, a broken cheekbone, and lacerations on her hand, thigh, and vaginal walls.

        In the kitchen, investigators found two bent and bloodied knives, one of which also had hair on it. All the phone lines in the house had been cut.

        By way of defense, the defendant presented evidence of an organic brain disorder, which left him with diminished intelligence and unable to control his impulses.  This was the result of a motorcycle accident in 1985, after which he had been in a

---

    [2] Their son testified the defendant first smothered the victim.

    [3] The victim could not recall anything after this point until she was en route to the hospital the next day.

1    coma for three days.

2    California Court of Appeal Opinion (Opinion) at 1.  See also 2003 WL 2292528.

3    V.  Argument & Analysis

4         A.  Ineffective Assistance of Trial and Appellate Counsel

5              All claims in the instant petition were denied by the state court without an

6    explicated opinion.  If a state court denies constitutional claims without an explicated decision, a

7    federal court reviewing a habeas corpus application pursuant to § 2254(a) "ha[s] no basis other

8    than the record for knowing whether the state court correctly identified the governing legal

9    principle or was extending the principle into a new context."  Delgado v. Lewis, 223 F.3d 976,

10   981-82 (9th Cir. 2000).  "While Supreme Court precedent is the only authority that is controlling

11   under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of

12   determining whether a particular state court decision is an "unreasonable application" of

13   Supreme Court law.' "  Luna v. Cambra, 306 F.3d 954, 960 (9th Cir.2002).  Thus, pursuant to

14   Delgado, the Court must conduct an independent review of the record to determine whether the

15   state court's decision was objectively unreasonable.  In Delgado, the Ninth Circuit held that,

16   "Federal habeas review is not de novo when the state court does not supply reasoning for its

17   decision, but an independent review of the record is required to determine whether the state court

18   clearly erred in its application of controlling federal law."  223 F.3d at 982; see also Luna, 306

19   F.3d at 954 (quoting Fisher v. Roe, 263 F.3d 906, 915 (9th Cir. 2001) (internal citation omitted)

20   ("We reverse only if 'a careful review of the record and the applicable case law leaves us with

21   the "firm conviction" that the state court was wrong.' ")).

22             A claim of ineffective assistance of counsel is cognizable as a claim of denial of

23   the Sixth Amendment right to counsel, which guarantees not only assistance, but effective

24   assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063

25   (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's

26   conduct so undermined the proper functioning of the adversarial process that the trial cannot be

6

1    relied upon as having produced a just result.  Id., 104 S. Ct. at 2064.

2            First, the defendant must show that counsel's performance was deficient.  This

3    requires showing that counsel made errors so serious that counsel was not functioning as the

4    "counsel" guaranteed by the Sixth Amendment.  Id. at 687, 104 S. Ct. at 2064.  The defendant

5    must show that counsel's representation fell below an objective standard of reasonableness.  Id.

6    at 688, 104 S. Ct. at 2064.  The relevant inquiry is not what defense counsel could have done, but

7    rather whether the choices made by defense counsel were reasonable.  Babbitt v. Calderon, 151

8    F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly

9    deferential, and a court must indulge a strong presumption that counsel's conduct falls within the

10   wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065;

11   Wildman v. Johnson, 261 F.3d 832, 838 (9th Cir. 2001) (finding no deficient performance by

12   counsel who did not retain a ballistics expert on a menacing charge where the same expert had

13   been used in the successful defense of the same defendant on a felon-in-possession charge);

14   Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994); but cf. United States v. Palomba, 31 F.3d

15   1456, 1466 (9th Cir. 1994) (presumption of sound trial strategy not applicable where indicia of

16   tactical reflection by counsel on issue absent from record).  The reasonableness of counsel's

17   decisions may be assessed according to professional norms prevailing at the time of trial.  Silva

18   v. Woodford, 279 F.3d 825, 846 (9th Cir. 2002).

19           Second, the defendant must show that counsel's errors were so serious as to

20   deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687

21   104 S. Ct. at 2064.  The test for prejudice is not outcome-determinative, i.e., defendant need not

22   show that the deficient conduct more likely than not altered the outcome of the case; however, a

23   simple showing that the defense was impaired is also not sufficient.  Id. at 693, 104 S. Ct. at

24   2067-68.  The defendant must show that there is a reasonable probability that, but for counsel's

25   unprofessional errors, the result of the proceeding would have been different; a reasonable

26   probability is a probability sufficient to undermine confidence in the outcome.  Id., 466 U.S. at

694, 104 S. Ct. at 2068; see, e.g., Jones v. Wood, 207 F.3d 557, 562-63 (9th Cir. 2000) (failure to investigate and present "other suspect" evidence); Hart v. Gomez, 174 F.3d 1067, 1073 (9th Cir. 1999) (failure to introduce evidence that corroborated testimony of a key defense witness whom the jury might otherwise not believe necessarily undermined confidence in the outcome); Brown v. Myers, 137 F.3d 1154, 1157 (9th Cir. 1998) (failure to investigate and present alibi witnesses prejudicial where, without corroborating witnesses, defendant's bare testimony left him without a defense); United States v. Span, 75 F.3d 1383, 1390 (9th Cir. 1996) (failure to request jury instruction prejudicial where reasonable probability defendants would have been acquitted with instruction); Palomba, 31 F.3d at 1465-66 (error that may increase defendant's sentence prejudicial even if reversal would not shorten prospective jail time); Sanders, 21 F.3d at 1461 (counsel's failure to interview individual who had confessed to crime and whom three eyewitnesses had identified as culprit prejudicial); Smith v. Ylst, 826 F.2d 872, 875 (9th Cir. 1987) (mental incapacity of counsel does not require per se reversal of conviction; defendant has burden to point to specific errors).

The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

### Claim 1 - Failure to challenge appointment of only one psychologist

Petitioner argues that trial counsel erred in not objecting to the appointment of one court ordered psychologist and should have requested two psychologists to assess petitioner's competency to stand trial and appellate counsel was ineffective for failing to raise the issue on appeal.  Amended Petition (AP) at 7.

It is a violation of the Due Process Clause to require an incompetent defendant to stand trial.  Cooper v. Oklahoma, 517 U.S. 348, 354, 116 S.Ct. 1373 (1996); Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836 (1966).  As stated by the Supreme Court, "[a] defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of

1   the proceedings against him.'" <u>Cooper v. Oklahoma</u>, 517 U.S. at 354, 116 S. Ct. at 1377.  Due

2   process requires that a trial court conduct a hearing on a defendant's mental competence to stand

3   trial when the trial court is confronted with evidence that raises a "bona fide doubt" as to the

4   defendant's mental competence.  <u>Pate</u>, 388 U.S. at 385, 86 S. Ct. at 842 .

5          California Penal Code § 1369 states in part:

6          The court shall appoint a psychiatrist or licensed psychologist, and any other
           expert the court may deem appropriate, to examine the defendant.  In any case
7          where the defendant or the defendant's counsel informs the court that the
           defendant is not seeking a finding of mental incompetence, the court shall appoint
8          two psychiatrists, licensed psychologists, or a combination thereof.

9   Cal. Penal Code § 1369.

10         In <u>People v. Robinson</u>, 151 Cal. App. 4th 606 (2007), the California Court of

11  Appeal held that the defendant was not entitled to the appointment of two experts to evaluate him

12  after the trial court declared a doubt as to his competency to stand trial.  <u>Id</u>. at 618.  The statutory

13  requirement of appointing two experts would have been triggered by defense counsel informing

14  the court that defendant was not seeking a finding of incompetence.  <u>Id</u>.

15         In the instant case, petitioner's defense counsel informed the court that on defense

16  counsel's initiative petitioner had been evaluated by a psychiatrist and there were concerns about

17  petitioner's competency to stand trial.  Clerk's Transcript (CT) at 10.  Pursuant to Cal. Penal

18  Code § 1368, the trial court set a competency hearing and appointed one doctor, Dr. Shawn

19  Johnston to evaluate petitioner's competency.  CT at 10.  Dr. Johnston noted:

20         There are no indications, for example, that any significant cognitive deficits
           and/or psychotic symptomatology specifically impair his ability to describe his
21         thoughts, feelings, or actions at the time of the commission of the alleged
           offenses.  Nor are there any indications that he is presently incapable of
22         understanding the kind of legal strategy or outcome in the present case that would
           be in his best interest.  Indeed, he is even capable of providing an exculpatory
23         explanation with regard to the allegations against him (i.e., namely, that his
           assault against his wife was based on self-defense as a result of her threatening
24         him with a pistol and attempting to rob him).  While I have no way of assessing
           the veracity of this [Petitioner]'s claims, his exculpatory explanation does not
25         include any of the kind of delusional thinking or possible hallucinations which
           could be of concern and a signal a possible psychosis.  Thus, even though his
26         explanation regarding what occurred could potentially stretch credibility, it is not

1  indicative of any psychotic thought process generally impairing his ability to
2  understand what is currently taking place or how to assist his attorney in
   defending him.

3  CT at 15-16.

4  The trial court found petitioner competent to stand trial. Petitioner now argues

5  that trial and appellate counsel were incompetent for neglecting to raise that pursuant to Cal.

6  Penal § 1369, the trial court should have appointed two experts to examine petitioner. AP at 7.

7  The trial record reflects that a doctor was appointed by the trial court after defense

8  counsel raised concerns about petitioner's competency. CT at 10. However, a review of the trial

9  record does not indicate if defense counsel sought a finding of competency or incompetency. In

10 his petition, petitioner does not address what finding defense counsel sought. Yet, in his

11 traverse, petitioner states that defense counsel was seeking a finding of competency. Traverse at

12 4. Petitioner does not cite to the trial record nor does petitioner cite to anything to demonstrate

13 where this information originated.

14 Assuming arguendo, that the trial court did err,[4] petitioner has not demonstrated

15 any prejudice. Petitioner offers no arguments on how testimony from an additional doctor would

16 have been beneficial or even if an additional doctor would have found petitioner incompetent.

17 Petitioner argues that because defense counsel doubted petitioner's competency it can be inferred

18 that an additional doctor would have found him incompetent. Traverse at 5. There is no

19 evidence to support this argument. Thus, petitioner argues that defense counsel was seeking a

20

21 [4] Petitioner's first problem is that he probably mistakes a potential violation of state law
   as a *per se* due process violation. This, of course, is not so. Even if petitioner was supposed to
22 have two experts (doubtful), there is no established Supreme Court's authority which mandates
   the appointment of two medical/mental experts for competency proceedings. Nor is it likely that
23 there ever will be. In the context of the statute at issue, the state has determined that two experts
   are necessary if the judge notes a possible incompetency, but the petitioner does not desire to
24 pursue such. While this may be necessary from the standpoint of persons involved in state
   criminal law procedure, given the possible extra complexity when a possibility incompetent
25 defendant believes himself to be competent, the federal Constitution does not guarantee two
   experts for complex situations. The only reason that the text of these Findings reviews assumes
26 an error under state law is that counsel can be ineffective under the Sixth Amendment for their
   failures regarding state law.

10

1   finding of competency but because defense counsel doubted petitioner's competency a second

2   doctor would have found petitioner incompetent to stand trial.  This argument has no merit.

3        A plain reading of Cal. Penal § 1369 and <u>People v. Robinson</u>, 151 Cal. App. 4th

4   606 (2007), reveals that counsel must assert that a finding of competency is sought to have the

5   trial court assign two doctors.  Petitioner has failed to show that trial counsel was trying to have

6   petitioner found competent.  Regardless, petitioner has failed to show that if trial and appellate

7   counsel did commit an error, how this error deprived petitioner of a fair trial.  Petitioner is not

8   entitled to habeas relief.

9        <u>Claim 2</u> - <u>Failure to examine witnesses at a competency hearing</u>

10       Petitioner contends that it was ineffective assistance of counsel when trial counsel

11  consented to a competency hearing without witnesses and rested on the record with only the

12  doctor's report in evidence and appellate counsel was ineffective for failing to raise the issue on

13  appeal.  AP at 9.

14       Where there is a genuine doubt as to a defendant's competency to stand trial, the

15  due process clause requires that a trial court conduct a hearing.  <u>Greenfield v. Gunn</u>, 556 F. 2d

16  935, 937 (9th Cir. 1977); <u>Pate v. Robinson</u>, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

17  In <u>Greenfield</u>, the defendant and his counsel were present for the competency proceedings and

18  had the opportunity to present evidence, but rested on the record of the reports before the court.

19  The Ninth Circuit held the proceeding did not violate due process as defendant and his counsel

20  were present.  <u>Greenfield</u>, at 937.

21       In <u>People v. Weaver</u>, 26 Cal. 4th 876, 904 (2001), the California Supreme Court

22  held that a hearing or trial pursuant to Cal. Penal Code § 1369:

23     ...simply mean[s] that a determination of competency must be
   made by the court (or a jury if one is not waived), not, as defendant

24     contends, that there must be a 'court or jury trial, at which the
   criminal defendant's rights of confrontation, cross examination,

25     compulsory process and to present evidence are honored by the
   court and counsel.'

26

1    The California Supreme Court in <u>Weaver</u>, also rejected defendant's claim that his

2  counsel was constitutionally ineffective for waiving a jury trial and merely submitting the matter

3  on the doctors' reports.  <u>Id</u>. at 904.

4    As previously mentioned, the trial court ordered an expert, Dr. Johnston, to

5  evaluate petitioner's competency.  CT at 10.  The trial court held a competency hearing based on

6  Dr. Johnston's findings.  CT at 17.  There was no testimony from any witnesses at the

7  competency hearing.  It appears from the record that the only evidence submitted to the court was

8  Dr. Johnston's report which found petitioner competent to stand trial.  CT at 17.  Petitioner's

9  counsel presented no evidence.

10    It also appears that part of petitioner's argument was based on communication

11  problems between petitioner and Dr. Johnston.  Petitioner did not speak English fluently and

12  required an interpreter during the trial.  In his report Dr. Johnston stated:

13    While at times I had to explain some concepts to him in simplified language, it
      was still generally possible to carry on a rational, coherent and goal-directed
14    conversation with him.  In my considerable experience with non-native English
      speaking clients, it is my opinion that his knowledge of English is sufficient to
15    conduct the present evaluation, but that it definitely required some extra patience
      on the part of the examiner.
16  CT at 13.

17    Petitioner contends that his trial and appellate counsel were ineffective because

18  Dr. Johnston was not called as a witness to be cross examined, no other evidence was presented

19  and the claim was not addressed on direct appeal.  AP at 9.  Petitioner quotes the trial record but

20  asserts no arguments on how he was prejudiced by counsels' actions.  This court assumes that

21  petitioner argues he was entitled to a complete evidentiary hearing on the issue of his

22  competency, pursuant to <u>Pate v. Robinson</u>, 383 U.S. 375, 386, 86 S. Ct. 836 (1966).  <u>See also</u>

23  <u>Moore v. U.S.</u>, 464 F. 2d 663, 666 (9th Cir. 1972) (defendant never received any type of hearing

24  when there was substantial evidence he was incompetent to stand trial).

25    The facts of the instant case are identical to <u>Greenfield</u> and <u>Weaver</u>.  The trial

26  court held a competency hearing and petitioner was present with his counsel.  CT at 17.  Counsel

1   had the opportunity to present evidence and call Dr. Johnston as a witness and conduct a cross

2   examination, but declined.  Both the Ninth Circuit and California Supreme Court held that

3   counsel is under no obligation to cross examine the expert or present any evidence.  Greenfield,

4   at 937; Weaver, at 904.  The Court in Greenfield specifically addressed the facts of Moore v.

5   U.S., 464 F. 2d 663, noting that in Moore, the petitioner had never been granted an evidentiary

6   hearing as to competency.  Greenfield, at 937, FN1.  As in the instant case, where a defendant is

7   given the opportunity to present evidence there is no violation of due process.  Id.

8          Petitioner has offered no arguments to demonstrate that counsel was deficient in

9   failing to cross examine Dr. Johnston or how a cross examination would have benefitted

10   petitioner.  While there were some communication barriers during the interview, Dr. Johnston

11   stated that he was able sufficiently conduct the examination.  CT at 13.  Accordingly, the state

12   court's determination of this issue was not contrary to, or an unreasonable application of, clearly

13   established Supreme Court precedent.

14                    Claim 3 - Failure to request a jury for the competency hearing

15          Petitioner next contends that it was ineffective assistance of counsel when trial

16   and appellate counsel failed to challenge the trial court's determination of competency without a

17   jury.  AP at 11.

18          Although it arises in the context of a criminal trial, a competency hearing is a

19   special proceeding, governed generally by the rules applicable to civil proceedings.  People v.

20   Johnwell, 121 Cal. App. 4th 1267 (2004).  Although there is a constitutional right to a jury trial

21   in criminal and civil actions, there is no such right in a competency proceeding.  People v.

22   Masterson, 8 Cal. 4th 965, 969 (1994).  The right to a jury in a California criminal competency

23   proceeding is a statutory, not constitutional right.  Id.  Counsel may waive the right to jury trial in

24   a competency proceeding, and the trial court need not advise defendant of that right.  Id. at 972.

25   In a competency proceeding, counsel has authority to waive a jury, and may make other decisions

26   regarding a jury, even over defendant's objection.  Id. at 974.

1    The trial court held a competency hearing without empaneling a jury and

2    petitioner was found competent.  CT at 17.  The trial record does not indicate if petitioner

3    knowingly, intelligently and voluntarily waived a jury trial on the issue of competency.

4    Petitioner argues that this constitutes ineffective assistance of trial and appellate counsel.

5    Petitioner cites Hicks v. Oklahoma, 447, U.S. 343, 346, 100 S. Ct. 2227 (1980), for the notion

6    that state law requiring a jury to impose the sentence provides a defendant "a substantial and

7    legitimate expectation that he will be deprived of his liberty only to the extent determined by a

8    jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth

9    Amendment preserves against arbitrary deprivation by the State."

10    Hicks concerned a law that required a jury be empaneled.  However, the

11    California Supreme Court was explicit in holding that while a competency hearing may utilize a

12    jury, it is not required.  People v. Masterson, at 970.  An attorney may waive the right to a jury

13    trial without even advising defendant of the right.  Masterson, at 972.  Petitioner cites no other

14    cases and provides no arguments why California law is unconstitutional or contrary to federal

15    law.  Petitioner has not shown that trial counsel's decision was deficient or appellate counsel

16    erred in not addressing this issue.  Petitioner has failed to even address how the waiver of a jury

17    prejudiced the case or how the absence of a jury undermined the verdict.  Petitioner has failed to

18    demonstrate ineffective assistance of trial or appellate counsel and this claim should be denied.

19                    Claim 4 - Failure to raise an insanity defense

20    Petitioner argues that he received ineffective assistance of trial and appellate

21    counsel for failure to raise an insanity defense at trial and failure to appeal the issue.  AP at 13.

22    To establish an insanity defense under California law, a defendant must show, "by

23    a preponderance of the evidence that he or she was incapable of knowing or understanding the

24    nature and quality of his or her act and of distinguishing right from wrong at the time of the

25    commission of the offense."  Cal. Penal Code § 25(b).  "Mental illness and mental abnormality,

26    in whatever form either may appear, are not necessarily the same as legal insanity.  A person may

1   be mentally ill or mentally abnormal and yet not be legally insane." People v. Coddington, 23

2   Cal. 4th 529, 608 (2000) (overruled on other grounds).

3          A defense attorney has a general duty to make reasonable investigations or to

4   make a reasonable decision that makes particular investigations unnecessary. See Strickland, 466

5   U.S. at 691, 104 S. Ct. at 2066. A claim of negligence in conducting pretrial investigation can

6   form the basis for a claim of ineffective assistance. See United States v. Tucker, 716 F.2d 576

7   (9th Cir. 1983). Counsel must, at a minimum, conduct a reasonable investigation enabling her to

8   make informed decisions about how best to represent her client. Sanders, 21 F.3d at 1457. The

9   duty of reasonable investigation extends to the issue of mental health. See Douglas v. Woodford,

10   316 F.3d 1079, 1085 (9th Cir. 2003) ( "Trial counsel has a duty to investigate a defendant's

11   mental state if there is evidence to suggest that the defendant is impaired.").

12          A tactical decision by counsel with which the defendant later disagrees is not a

13   basis for a claim of ineffective assistance of counsel. Guam v. Santos, 741 F.2d 1167, 1169 (9th

14   Cir. 1984); United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981). Where it is possible that

15   the failure to present evidence was a "difficult but thoughtful tactical decision," a reviewing court

16   must presume that counsel's conduct was "within the range of competency." Harris v. Pulley,

17   885 F.2d 1354, 1368 (9th Cir. 1988).

18          Petitioner argues that counsel was ineffective for failing to raise an insanity

19   defense due to injuries from a motorcycle accident in 1985. AP at 14. However, this is not a

20   case where petitioner's counsel neglected to investigate a potential insanity defense. Counsel

21   initially requested the competency hearing and had petitioner examined by several doctors. AP at

22   13-15. During trial counsel called three medical expert witnesses to testify about petitioner's

23   mental problems. Reporter's Transcript (RT) at 318, 334, 384. The experts included Dr.

24   Woodman, a psychologist, Dr. Thompson, a psychiatrist and Dr. Wicks, a neuropsychologist. Id.

25          Dr. Woodman testified that petitioner suffered head and brain injuries from a

26   motorcycle accident in 1985. RT at 337. Petitioner was however, able to think in a straight line

1    and according to Dr. Woodman, not mentally ill, rather grounded in reality.  RT at 342.  Dr.

2    Thompson testified that petitioner understands the difference between right and wrong.  RT at

3    327.  None of Dr. Wicks testimony indicated that petitioner had problems distinguishing between

4    right and wrong.

5           It is clear from the record that counsel conducted a thorough investigation into

6    petitioner's mental state and presented the evidence at trial.[5]  The evidence presented did not rise

7    to a level that would indicate insanity, as petitioner could tell the difference from right and

8    wrong.  With respect to the petition, petitioner has provided no new facts and no case law to

9    allege that his mental problems were sufficient for an insanity defense.  Petitioner simply

10   repeated the evidence that was presented at trial by the defense experts.

11          Petitioner has made no showing that counsel's performance was deficient.  Even

12   if petitioner were to make a showing that counsel made some errors, judicial scrutiny of

13   counsel's performance must be highly deferential, and a court must indulge a strong presumption

14   that counsel's conduct falls within the wide range of reasonable professional assistance.  See

15   Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Wildman v. Johnson, 261 F.3d 832, 838 (9th Cir.

16   2001).  Petitioner has also failed to show any prejudice from trial and appellate counsels failure

17   to raise an insanity defense.  Looking at the evidence and testimony from the expert witnesses,

18   petitioner was not insane under California law.

19          As such it seems likely that any attempt to mount an insanity defense would have

20   been unsuccessful.  Petitioner argues that testimony of the defense experts at trial demonstrates

21   that petitioner was insane.  Petitioner is incorrect and the state court rejection of this claim was

22   not an unreasonable application of federal law.

23   \\\\\

24   \\\\\

25   ───────────────

26          [5] Defense counsel argued that petitioner's mental problems caused petitioner to lash out
     in the heat of passion and there was no deliberation or premeditation.

1          Claim 5 - Failure on appeal to challenge presence of support person during

2    testimony

3          Petitioner next argues that appellate counsel failed to raise on appeal that the

4    presence of a support person during a witness' testimony violated petitioner's Sixth Amendment

5    rights.  AP at 16.

6          The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

7    prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

8    him. . . ."  U.S. Const. Amend. VI.  This right, extended to the States by the Fourteenth

9    Amendment, includes the right to cross-examine witnesses.   Cruz v. New York, 481 U.S. 186,

10    189, 107 S. Ct. 1714, 1717 (1987).  It guarantees the defendant a face-to-face meeting with

11    witnesses appearing before the trier of fact.  See Coy v. Iowa, 487 U.S. 1012, 1016, 108 S. Ct.

12    2798, 2801 (1988) (placement of screen between defendant and child sexual assault victims

13    during testimony against defendant violated defendant's Confrontation Clause rights); Davis v.

14    Alaska, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110 (1974) (notwithstanding state policy protecting

15    anonymity of juvenile offenders, refusal to allow defendant to cross examine key prosecution

16    witness denied defendant constitutional right to confront witnesses).  This physical confrontation

17    "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully

18    implicate an innocent person."  Maryland v. Craig, 497 U.S. 836, 846, 110 S. Ct. 3157, 3164

19    (1990).  The right guaranteed by the Confrontation Clause also insures that the witness will give

20    his statements under oath-thus impressing him with the seriousness of the matter and guarding

21    against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to

22    cross-examination ...; [and] (3) permits the jury that is to decide the defendant's fate to observe

23    the demeanor of the witness in making his statement, thus aiding the jury in assessing his

24    credibility.  Id. at 845-46.

25    \\\\\

26    \\\\\

17

California Penal Code § 868.5 provides in part:

> Notwithstanding any other law, a prosecution witness in a case involving a violation of Section 187... shall be entitled, for support, to the attendance of up to two persons of his or her own choosing, one of whom may be a witness, at the preliminary hearing and at the trial, or at a juvenile court proceeding, during the testimony of the prosecuting witness.

The victim, Samina Javiad, testified while accompanied by a victim advocate support person.  RT at 137.  The support person escorted Javiad to the witness stand and sat down behind her during the testimony.  Petitioner's trial counsel objected, but was overruled by the trial court.  RT at 137.  Petitioner's trial counsel noted that the advocate was seated some distance behind Javiad and it was unclear if Javiad even noticed the advocate was present.  Id.  Petitioner now alleges that appellate counsel was ineffective for failing to raise this issue on appeal.

Petitioner argues that Cal. Penal Code § 868.5 erodes the presumption of innocence and violates the confrontation clause by interfering with the jury's observation of the demeanor of the witness.  AP at 17.  In the instant case, petitioner was not denied the right to confront and cross examine the witness.  Javiad testified under oath and in full view of the jury while trial counsel conducted the cross examination.  The support person did not sit with the victim but sat some distance behind her and said nothing during the testimony.  RT at 137.  There is nothing in the record to indicate the presence of the support person interfered in any way with Javiad's testimony.  Petitioner cites no specific actions of the support person to bolster this claim.

No established Supreme Court authority exists which can be stretched to encompass the "support person" argument.  In a case in which a support person was authorized, the district court succinctly set forth the pertinent law:

> The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI; see Pointer, 380 U.S. at 403 (confrontation right applies to the states through the 14th Amendment).  It guarantees the defendant a face-to-face

18

meeting with witnesses appearing before the trier of fact.  See Coy v. Iowa, 487 U.S. 1012, 1016 (1988) (placement of screen between defendant and child sexual assault victims during testimony against defendant violated defendant's Confrontation Cause rights); Davis v. Alaska, 415 U.S. 308, 315 (1974) (notwithstanding state policy protecting anonymity of juvenile offenders, refusal to allow defendant to cross examine key prosecution witness denied defendant constitutional right to confront witnesses). This physical confrontation "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." Maryland v. Craig, 497 U.S. 836, 846 (1990).  The right guaranteed by the Confrontation Clause also (1) insures that the witness will give his statements under oath-thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination ...; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

Schrodt v. Pleasant Valley State Prison Warden, 2006 WL 1867586 (N.D. Cal. 2006).

Schrodt went on to hold that the support person used in its case took away none of the confrontive aspects required by Craig.  The same holds true here.  The jury would be able to tell if the support person was unduly influencing the testimony, as would counsel.  To the extent that petitioner would argue that the support person was a judicial confirmation that the victim had indeed been harmed by the defendant, a type of rebuttable presumption, the claim is not a Confrontation Clause claim but one dealing with due process.  Petitioner makes no such claim here, and the court will not analyze such a claim here.

If the Confrontation Clause was not violated, counsel could not have been ineffective.  Petitioner's Confrontation Clause claim, filtered through an ineffective assistance of appellate counsel claim, should be denied.

Claim 6 - Admission of evidence of genital injury on appeal

Petitioner argues that appellate counsel failed to challenge on appeal the trial court's admission of evidence concerning genital injuries suffered by the victim.  AP at 18.

A district court may not review collaterally a state court's evidentiary ruling unless it violates federal law, either by violating a specific constitutional provision or by

1   infringing upon the due process right to a fair trial.  <u>Pulley v. Harris</u>, 465 U.S. 37, 41, 104 S. Ct.

2   871 (1984).  Habeas review does not lie in a claim that the state court erroneously allowed or

3   excluded particular evidence according to state evidentiary rules.  <u>Jammal v. Van de Kamp</u>, 926

4   F.2d 918, 919 (9th Cir. 1991).

5           California Evidence Code § 210 states:

6           "Relevant evidence" means evidence, including evidence relevant to the
            credibility of a witness or hearsay declarant, having any tendency in reason to

7           prove or disprove any disputed fact that is of consequence to the determination of
            the action.

8

9           The trial court held an evidentiary hearing without the jury, regarding the

10  prosecution's introduction of evidence concerning injuries the victim, Samina Javiad, suffered to

11  her groin and vagina.  RT at 350-369.  Nurse practitioner Nancy Siegel testified at the hearing

12  about Javiad's injuries below the waist.  RT at 353.  Siegel stated that Javiad had a small

13  puncture wound and a half-centimeter laceration at the right groin, bruising on both knees and a

14  two centimeter superficial laceration inside her vagina that was bleeding.  RT at 353, 355.  Due

15  to the bleeding, Siegel believed that the vaginal wound occurred within twelve hours of the

16  examination and all the wounds were fresh and occurred within twenty-four hours of the

17  examination.  RT at 358, 361-362.  Siegel also testified that the injuries to the vagina could have

18  been caused by the victim being stabbed through her clothing.  RT at 377.

19          Defense counsel objected to the introduction of this testimony on the basis that the

20  evidence was highly prejudicial as it indicated sexual assault rather than the charged crimes and

21  the evidence was vague and not probative.  RT at 362-363.  The trial court admitted the evidence

22  pursuant to Cal. Evid. Code § 352,[6] noting that the vaginal injuries occurred contemporaneously

23  with the groin injuries and the evidence was applicable to the definition of torture, one of the

24  ───────────────

25          [6] California Evidence Code § 352 states, "The court in its discretion may exclude
    evidence if its probative value is substantially outweighed by the probability that its admission

26  will (a) necessitate undue consumption of time or (b) create substantial danger of undue
    prejudice, of confusing the issues, or of misleading the jury."

charges.  The trial court also ruled:

> "I think through cross-examination you'd be able to elicit whatever information you need, and as previously indicated I don't want any reference about a sexual assault exam for purposes of rape or any sexual assault reference because it is not relevant because such an exam was not performed and has not been alleged to."

RT at 368.

Petitioner now argues that appellate counsel should have challenged the trial court's ruling on appeal, as the testimony was prejudicial.  AP at 18.  Petitioner provides no argument on how this evidence was prejudicial or affected the jury's verdict.  This court assumes that petitioner was referencing trial counsel's objection that the jury would infer that there was a sexual molestation, despite not being a charged offense.

Nevertheless, nurse Siegel's testimony concerning Javiad's injuries was clearly relevant based on the criminal charges, especially torture.[7]  Testimony of injuries was proper to prove these charges beyond a reasonable doubt.  The trial court correctly conducted an evidentiary hearing outside the presence of the jury to determine if the evidence would be too prejudicial.  The trial court was in the best decision to make this determination and the record indicates that the trial court made the proper decision and instructed the prosecution not to refer to the nurse's examination as a sexual assault or rape exam.  RT at 368.

Even if there was an error allowing the genital injury evidence, petitioner has not demonstrated any prejudice.  Petitioner has failed to show any violation of federal law and this claim should be denied.  Thus, counsel was not ineffective.

Claim 7 - Failure to raise a self-defense claim

Petitioner contends that the trial court erred by not sua sponte issuing self-defense instructions to the jury and trial and appellate counsel were ineffective for not raising self-

---

[7]  Cal. Penal Code § 206 states, "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture."

1  defense claims at trial and on appeal.  AP at 21.

2        A challenge to a jury instruction solely as an error under state law does not state a

3  claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62,

4  71-72, 112 S. Ct. 475, 481- 482 (1991).  Nor does the fact that a jury instruction was inadequate

5  by Ninth Circuit direct appeal standards mean that a petitioner who relies on such an inadequacy

6  will be entitled to habeas corpus relief from a state court conviction.  See Duckett v. Godinez, 67

7  F.3d 734, 744 (9th Cir. 1995) (citing Estelle, 502 U.S. at 71-72, 112 S. Ct. at 482).

8        In California, even without a request, the trial court must instruct the jury on

9  general principles of law raised by the evidence.  People v. Breverman, 19 Cal. 4th 142, 154

10  (1998).  The trial court is not required to give an instruction that has no foundation in the

11  evidence.  People v. McClindon, 114 Cal. App. 3d 336, 340 (1980).  The court should only give

12  self defense instructions sua sponte, if there is substantial evidence of the defense.  People v.

13  Elize, 71 Cal. App. 4th 605, 615 (1999).

14        A tactical decision by counsel with which the defendant later disagrees is not a

15  basis for a claim of ineffective assistance of counsel.  Guam v. Santos, 741 F.2d 1167, 1169 (9th

16  Cir. 1984); United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981).  Where it is possible that

17  the failure to present evidence was a "difficult but thoughtful tactical decision," a reviewing court

18  must presume that counsel's conduct was "within the range of competency."  Harris v. Pulley,

19  885 F.2d 1354, 1368 (9th Cir. 1988).

20        Petitioner did not testify; he presented no direct testimony supporting a self-

21  defense theory.  He has presented no evidence in this proceeding to suggest that self-defense was

22  viable.  Hence his asserted denial of a self-defense instruction through the actions of counsel

23  borders on the frivolous.  Petitioner's argument rests on a few pre-trial statements he made

24  indicating that his wife was the aggressor.  In petitioner's pre-trial psychological report,

25  petitioner stated that he went to his wife's house and his wife pointed a gun at him and demanded

26  money, at which time petitioner grabbed a knife to defend himself.  CT at 14.  The day after the

1  crime was committed, petitioner went to the police station and told a police officer that his wife

2  had drawn a gun on him and he stabbed her in response.  Opinion at 2.  Petitioner cites no other

3  evidence to allege a claim of self-defense and now argues that trial and appellate counsel were

4  ineffective in failing to raise the claim and the trial court erred in not sua sponte issuing a jury

5  instruction of self-defense.

6        To assert a claim of self-defense, petitioner must have actually and reasonably

7  believed he was facing an imminent and unlawful threat or death or great bodily injury and must

8  have had an actual and reasonable belief in the need to defend himself.  People v. Humphrey, 13

9  Cal. 4th 1073, 1082-1083 (1996).  The trial counsel did not raise a self-defense claim and there

10  was only a small amount of evidence regarding self defense presented at trial.  It should be noted

11  that petitioner's pre-trial statements that provided evidence of self-defense contradicted other

12  pre-trial statements petitioner provided about the incident.  The evidence was not substantial

13  enough to warrant the trial court to sua sponte issue a self-defense instruction.

14        A review of the evidence shows that trial counsel's choice not to assert a self-

15  defense claim was a thoughtful and reasonable tactical decision and this court presumes that trial

16  counsel's conduct was competent.  Harris, 885 F. 2d at 1368.  Petitioner cites no cases to show

17  how the facts he has presented could even be remotely construed as self defense.  In addition,

18  overwhelming evidence was presented at trial, including testimony from the victim and her two

19  children, that petitioner was the aggressor:

20        On that date, the victim returned to her home about 4:30 p.m. after picking up the
          children (born 1991 and 1993) at school.  There were no cars parked outside the
21        house.  The victim sat down on the sofa with her daughter while the children
          watched television.  The defendant abruptly emerged from the bathroom, holding
22        a pellet gun.  The victim ran to the front door.  The defendant fired at her, then
          stopped her escape by beating her on the head with the gun until it broke into two
23        pieces.  He dragged her into the kitchen.[8]  Their daughter heard him use a phrase
          twice that in their culture meant he desired a reconciliation.  He began to stab the

24

25

26     [8]  Their son testified the defendant first smothered the victim.

victim with a knife from his pocket.[9]  Their son testified the defendant also stabbed her with a knife from the kitchen.  The children testified that the defendant "started jumping on her back" a "[w]hole bunch of times."  He laid a towel over the victim's face, grabbed the keys to her car, and left with the children, taking them to his sister's house.

The victim was hospitalized for over three weeks.  She could not speak until May 2001, has recurring dizzy spells, and needs someone to watch her.  The trauma surgeon described her injuries as including three deep stab wounds to the neck that perforated her esophagus and trachea, multiple cuts to her face, black eyes from a skull fracture, a broken cheekbone, and lacerations on her hand, thigh, and vaginal walls.

In the kitchen, investigators found two bent and bloodied knives, one of which also had hair on it.  All the phone lines in the house had been cut.

Opinion at 1.

        Based on this evidence, trial counsel was not ineffective for failing to raise a self-defense claim nor did appellate counsel err in failing to raise this claim on appeal.  Petitioner has failed to show how he was prejudiced without the self defense claim nor was there a demonstration that the state court's ruling was contrary to any established federal law.

                    Claim 8 - Failure to request lesser included offense instruction

        Petitioner argues that the trial court should have issued a sua sponte jury instruction regarding attempted voluntary manslaughter under a theory of unreasonable self defense and trial and appellate counsel were ineffective for failing to raise the issue.  AP at 24.

        A challenge to jury instructions does not generally state a federal constitutional claim.  See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1981); see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States

_____

        [9]  The victim could not recall anything after this point until she was en route to the hospital the next day.

1   (citations omitted)."  Estelle v. McGuire, 502 U.S. at 68, 112 S. Ct. at 480.  In order for error in

2   the state trial proceedings to reach the level of a due process violation, the error had to be one

3   involving "fundamental fairness."  Id. at 73, 112 S. Ct. at 482.  The Supreme Court has defined

4   the category of infractions that violate fundamental fairness very narrowly.  Id. at 73, 112 S. Ct.

5   at 482.

6           California law holds that the trial court must instruct on lesser included offenses

7   when the evidence raises a question as to whether all the elements of the charged offense were

8   present, but the trial court is not obligated to provide the instruction when there is no evidence

9   that the offense was less than that charged.  People v. Breverman, 19 Cal. 4th 142, 154 (1998).

10          The trial court instructed the jury with the lesser included offense of attempted

11  voluntary manslaughter, Cal. Penal Code §§ 664/192(a), the attempted unlawful killing of a

12  human being without malice, upon a sudden quarrel or heat of passion.[10]  RT at 422-424.

13          Petitioner argues that he should have been charged with attempted voluntary

14  manslaughter under a theory of "unreasonable self defense," in that petitioner attempted to kill

15  the victim in an unreasonable, but good faith belief in having to act in self defense.  In re

16  Christian S., 7 Cal. 4th 768, 783 (1994).  "[T]he doctrine is narrow.  It requires without exception

17  that the defendant must have had an actual belief in the need for self-defense .... The defendant's

18  fear must be of imminent danger to life or great bodily injury."  [T]he peril must appear to the

19  defendant as immediate and present and not prospective or even in the near future.  An imminent

20  peril is one that, from appearances, must be instantly dealt with."  Id.  Petitioner once again relies

21  on the evidence that he acted in self defense.

22          Petitioner's claim that the trial court had a duty to sua sponte issue these jury

23  instructions is fundamentally flawed.  A review of the trial record demonstrates that there was

24  not enough evidence to support an issuing of a jury instruction of unreasonable self defense.

25  _____

26      [10] Petitioner was ultimately found guilt of the unlawful attempted killing of a human
    being with malice aforethought, Cal. Penal Code §§ 664/187(a).

1 Without any evidence, the trial court was under no obligation to issue such an order. <u>People v.</u>

2 <u>Breverman</u>, 19 Cal, 4th at 154.

3       Similarly, petitioner's argument that trial and appellate counsel were ineffective is

4 equally flawed.  To obtain a jury instruction for unreasonable self defense, the evidence would

5 need to be enough for the jury to reasonably conclude that petitioner killed the victim in the

6 unreasonable but good faith belief in having to act in self-defense.  Petitioner's only evidence

7 relies on a few self serving statements.  As previously mentioned, the testimony of the victim and

8 two witnesses overwhelmingly contradicts any theory of self defense that petitioner contends.

9 No reasonable jury could conclude that petitioner acted in self defense.  Petitioner has also failed

10 to demonstrate that the alleged error violated any constitutional right or that he was prejudiced by

11 counsel's failure to raise the issue.

12       <u>Claim 9</u> - <u>Failure to object to jury instruction</u>

13       Lastly, petitioner argues that trial counsel and appellate counsel were ineffective

14 for failing to challenge the trial court's issuance of California Jury Instruction Criminal

15 (CALJIC) 2.03 regarding willfully false statements.  AP at 26.

16       California Jury Instruction Criminal 2.03 states:

17       If you find that before this trial [a] [the] defendant made a willfully false or
        deliberately misleading statement concerning the crime[s] for which [he] [she] is
18       now being tried, you may consider that statement as a circumstance tending to
        prove a consciousness of guilt. However, that conduct is not sufficient by itself to
19       prove guilt, and its weight and significance, if any, are for you to decide.

20       The giving of CALJIC 2.03 is proper when there is evidence that the defendant

21 prefabricated a story to explain his conduct.  <u>People v. Edwards</u>, 8 Cal. App. 4th 1092, 1103

22 (1992).  Other evidence can be used to demonstrate the falsity of defendant's pretrial statement

23 and an inference of a consciousness of guilt may be drawn by the jury.  <u>Id</u>. at 1104.  The trial

24 court is responsible for instructing the jury on the proper method to analyze the testimony.  <u>Id</u>.

25       Petitioner made several pretrial statements concerning the incident.  On the day

26 after the attack, petitioner went to the police station and reported that he had been in a fight with

1  the victim and she was dead.  AP at 27.

2  Approximately twenty minutes later petitioner stated to the police that he and the

3  victim were going through a divorce and he had gone to her house to pick up the kids.  The

4  victim pulled a gun during an argument, they fought for the gun and petitioner grabbed a knife

5  and stabbed the victim at which point he left with the kids.  RT at 202-203.

6  Petitioner reported to Dr. Thompson in an interview that the victim had picked

7  him up and took him to her house.  The victim left petitioner at her house while she went to pick

8  up the kids and then returned.  Petitioner stated that the victim started to act strangely, demanded

9  fourteen thousand dollars and petitioner thought there was a man named George in the house.

10  Petitioner then stated he got into a fight with the victim and he ended up stabbing her.  RT at 326.

11  Petitioner's above statements were contradicted by the testimony of the victim and

12  witnesses.  As previously mentioned, petitioner's two children testified that petitioner was hiding

13  in the house and suddenly emerged with a gun, shooting the victim and then assaulting her and

14  stabbing her, unprovoked.[11]  At the end of the trial, the trial court issued CALJIC 2.03 and the

15  jury eventually returned a verdict of guilty.

16  Petitioner now argues that trial and appellate counsel were ineffective for failing

17  to address this jury instruction.  In his petition, petitioner recounts the language of the jury

18  instruction and quickly recounts how his testimony differed from the prosecution witnesses.

19  Petitioner makes no arguments concerning why he is entitled to habeas relief for this claim.  It

20  appears petitioner is arguing that CALJIC 2.03 was inappropriate because petitioner's pre-trial

21  statements were not in conflict with any defense testimony.[12]  The only discrepancies were

22  between petitioner's pre-trial statements and the testimony of the prosecution witnesses.

23  However, CALJIC 2.03 was properly used to demonstrate discrepancies between petitioner's pre-

24  

25  [11]  The gun was a pellet gun.

26  [12]  Petitioner did not testify at trial.

trial statements and prosecution evidence, such as witness testimony.  <u>People v. Edwards</u>, 8 Cal. App. 4th 1092, 1104 (CALJIC 2.03 was proper when falsity of defendant's statements were shown by testimony of other witnesses even when defendant's in-court testimony was consistent with pre-trial statements).

It is important to note that the trial court did not instruct the jury that petitioner had made false statements nor did the trial court reference a particular statement.  Instead, the court instructed the jury with the proper language of CALJIC 2.03, and it was left to the jury to determine what, if any statements, were false.

There was ample evidence to indicate that petitioner's pre-trial statements could be construed by the jury to have been fabricated, thus the trial court properly instructed the jury with CALJIC 2.03.  Petitioner has failed to demonstrate how the jury instruction was contrary to federal law or that trial and appellate counsel were ineffective for failing to raise the challenge.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: 01/08/09

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

ggh:006
akht2674.hc

28